IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO: 1:15-cv-00938

| | |
|---|---|
| LYDIA SUSAN HALL,<br><br>        Plaintiff,<br><br>    v.<br><br>ROCKINGHAM COUNTY; THE BOARD OF COUNTY COMMISSIONERS OF ROCKINGHAM COUNTY; and DAVID L. WHICKER, individually and in his official capacity as Chief Information Officer for Rockingham County,<br><br>        Defendants. | **COMPLAINT**<br>**(Jury Trial Demanded)** |

NOW COMES the Plaintiff, Lydia Susan Hall, by and through counsel, and as and for her Complaint hereby shows and alleges against the Defendants as follows:

## PARTIES

1.      Plaintiff is a citizen and resident of Rockingham County, North Carolina.

2.      Defendant Rockingham County (hereinafter the "County") is a body politic and corporate as established under N.C. Gen. Stat. § 153A-11 and is a political subdivision of the State of North Carolina

3.      Defendant Board of County Commissioners of Rockingham County (hereinafter the "Board") is a body corporate, charged by state law and elected by the citizens of the County to govern the County.

4.      At all times relevant to this action, Defendant David L. Whicker was employed by the County and Board as the Chief Information Officer of the County. At all times relevant to this

action, Defendant Whicker was an agent, representative, officer, and/or manager of Defendant County.

## JURISDICTION & VENUE

5.     The Court has jurisdiction over Plaintiff's First, Second, Third, and Fourth claims pursuant to 28 U.S.C. § 1331.

6.     The Court has jurisdiction over Plaintiff's Fifth, Sixth, and Seventh claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

8.     Plaintiff filed a Charge of Discrimination with the EEOC against the County on October 27, 2014.  The Charge was not resolved and, on August 11, 2015, the EEOC mailed to Plaintiff a Dismissal and Notice of Rights, including a Notice of Suit Rights.  Plaintiff's federal law claims asserted herein are timely filed in accordance with said Notice.

## FACTUAL ALLEGATIONS

9.     Plaintiff was employed by the County for approximately 26 years, from 1988 until on or about September 30, 2014.

10.     Effective October 1, 2014, Plaintiff began her disability retirement from the County.

11.     Plaintiff's need and eligibility for disability retirement was caused and necessitated by the wrongful and illegal actions of the Defendants as described herein.

12.     Plaintiff's most recent position with the County was as the Director of 911 Communications, in which position she served from 2002 until she had to take medical leave from her employment with the County beginning on May 28, 2014, and, ultimately, until she began her disability retirement effective October 1, 2014.

2

13.     Among other things, Plaintiff's job duties as Director of 911 Communications included scheduling, directing, supervising, and ensuring that the telecommunicators were properly trained in answering telephone and radio calls for emergency and non-emergency assistance, and in processing, obtaining, and distributing information through the Division of Criminal Information ("DCI") and the National Crime Information Center ("NCIC").

14.     Plaintiff was a hard-working and dedicated servant of the citizens of Rockingham County.

15.     Plaintiff was a dedicated and loyal County employee, who took her job responsibilities very seriously and worked tirelessly to ensure the best possible services to citizens of the County.

16.     Plaintiff worked hard to ensure County employees, in particular those working in the critical area of 911 communications, received the training necessary to provide effective and efficient services to the citizens of Rockingham County.

17.     Plaintiff was dedicated to promoting professionalism and cooperation among all first responders in Rockingham County.

18.     Plaintiff was a leader in the field of 911 communications in the county, as evidenced by, among other things, her work to promote and implement the county-wide transition to the 800 MHz Viper Radio Communications System in or around 2006.

19.     In 2010, Plaintiff was recognized by the North Carolina Association of Public Safety Officials as the 911 Manager/Director of the Year.

20.     Also in 2010, Plaintiff was recognized by the National Emergency Number Association as Communications Leader of the Year.

21.     In 2011, Plaintiff was integral to the County's successful grant application for the 911 PSAP (Public Safety Answering Point) Consolidation Project, which, in December of 2011,

3

resulted in a $7.826 Million grant being awarded to the County for a new, state-of-the-art 911 Communications Center.

22.     Since December of 2011, Lance L. Metzler was employed by the County and Board as the County Manager of the County (the "County Manager"). The County Manager serves as the chief administrator of the County government and is responsible to the Board for administering all departments of County government under the Board's general control.

23.     In March of 2014, the County Manager granted Defendant Whicker supervisory power over Plaintiff and the 911 Communications Department.

24.     The County Manager placed Defendant Whicker in a supervisory position over Plaintiff despite the County Manager and members of the Board being aware that Plaintiff had previously been subjected to sexist, hostile, and otherwise discriminatory behavior by Defendant Whicker.

25.     The County Manager placed Defendant Whicker in a supervisory position over Plaintiff and over 911 Communications, despite Defendant Whicker having no experience, qualifications and/or background in dispatch, telephone, radio console, emergency services, fire, rescue, or law enforcement.

26.     Upon information and belief, the County Manager placed Defendant Whicker in a supervisory position over Plaintiff because the County Manager did not want to have to deal with the management and funding issues associated with the 911 PSAP Consolidation Project, and he did not trust a female to oversee and handle the project. County government is dominated by white male supervisors and directors.

27.     Upon information and belief, before being hired by the County and Board, Defendant Whicker's employment relationship with a previous employer had ended following charges of improper conduct, including sexual harassment of a female employee.

4

28.    Upon information and belief, when the County and Board hired Defendant Whicker, the County and Board knew, or should have known, that Defendant Whicker's employment relationship with a previous employer had ended following charges of improper conduct, including sexual harassment of a female employee.

29.    Plaintiff maintained an exemplary employment record with the County until May 27, 2014.

30.    On May 27, 2014, just over two months after being appointed to supervise Plaintiff, Defendant Whicker presented Plaintiff with a Performance Improvement Plan, dated May 27, 2014 (the "PIP").

31.    Defendant Whicker called a meeting on May 27, 2014, to present Plaintiff with the PIP (the "PIP Meeting").

32.    In attendance for the PIP Meeting called by Defendant Whicker were the County Manager, Lance L. Meltzer; Jamie Joyner of Human Resources; and Nichole McLaughlin of Human Resources.

33.    The PIP, which was "from" Defendant Whicker and addressed to Plaintiff, falsely and maliciously accused Plaintiff of a variety of "unacceptable personal conduct," including "insubordination and inappropriate behavior," "conduct conducive to creating an environment of fear and distrust," and falsely stated that Plaintiff "readily attributes blame / avoids taking responsibility for required job duties."  The PIP also falsely and maliciously accused Plaintiff of "failure in performance of duties."

34.    The PIP outlined extensive corrective actions required with respect both to the alleged "unacceptable personal conduct" and to the alleged "failure in performance of duties," and the PIP also set forth "additional performance improvement goals," which reflected Defendant

5

Whicker's dissatisfaction with the fact that Plaintiff used her vacation days (four each year) to teach the North Carolina Sheriff's Standard Mandated Training, which was training required for personnel to be able to perform dispatch duties within a 911 center and was training she had been asked to conduct for many years.

35.    In addition to being premised on false and malicious allegations of wrongdoing, the performance goals and corrective actions set forth in the PIP were unreasonable and, upon information and belief, designed to set up Plaintiff for failure.

36.    The PIP presented to Plaintiff by Defendant Whicker on May 27, 2014, was part of Defendant Whicker's ongoing harassment of Plaintiff, and was prepared and submitted in retaliation for Plaintiff's previous verbal report to Human Resources of Defendant Whicker's sexist and hostile treatment of Plaintiff.

37.    On May 14, 2014, Plaintiff made a verbal report to the County's Human Resources Department, in particular Nichole McLaughlin, regarding Defendant Whicker's ongoing harassment of Plaintiff.  Later that same day, Ms. McLaughlin sent an email message to Plaintiff inviting her to fill out the form "Discrimination/Harassment Formal Complaint Form."

38.    Upon information and belief, Defendant Whicker was informed of Plaintiff's verbal report to Human Resources regarding Defendant Whicker's harassment of Plaintiff, and, thereafter, Defendant Whicker prepared the PIP in further harassment of and in retaliation for Plaintiff's verbal report to Human Resources regarding his inappropriate and illegal behavior.

39.    Ms. McLaughlin, to whom Plaintiff made the verbal report of harassment on May 14, 2014, was present at the PIP Meeting called by Defendant Whicker on May 27, 2014.

40.     The PIP included alleged "insubordination and inappropriate behavior" by Plaintiff going back to March 12, 2014, over two and half months earlier, which issues had never before been addressed with Plaintiff by Defendant Whicker or anyone else on behalf of the County.

41.     Before Defendant Wicker was assigned supervisory authority over Plaintiff in March of 2014, Defendant Whicker openly harassed and created a hostile work environment for Plaintiff, by, among other ways to be shown at trial, publicly belittling her in front of her colleagues; interrupting and speaking over her during meetings, including, but not limited to, meetings of the Rockingham County Emergency Communications Governance Board (the "RCECGB"); ridiculing her opinions and limiting her opportunities to speak; and in other ways treating her in an undignified, unprofessional, and unlawful manner.

42.     In monthly meetings of the RCECGB, including, but not limited to, meetings from approximately early 2012 through May of 2014 (when Plaintiff went out of work on medical leave), Defendant Whicker treated Plaintiff in a hostile, demeaning, and disrespectful manner. Plaintiff was normally the only female present at such RCECGB meetings, where Defendant Whicker publicly berated and belittled her, and she was frequently singled out as a target of his hostility. Defendant Whicker only acted this way toward Plaintiff, often the only female in attendance. When a male attendee spoke, Defendant Whicker treated them differently, waiting patiently until the male attendee was finished speaking.

43.     Defendant Whicker's inappropriate treatment of Plaintiff at various meetings prior to March of 2014 – at which time Defendant Whicker was provided supervisory authority over Plaintiff – was known by the County Manager and various members of the Board.

44.     Defendant Whicker's harassment and mistreatment of Plaintiff intensified after he was provided with supervisory authority over her in March of 2014.

7

45.     After Defendant Whicker was provided with supervisory authority over Plaintiff in March of 2014, he required that Plaintiff attend weekly "one-on-one" meetings with him.

46.     Frequently, Defendant Whicker was late or did not even show up for scheduled one-on-one meetings with Plaintiff.

47.     At the weekly one-on-one meetings and at other meetings with Plaintiff during the period from March 2014 until the end of May of 2014 (at which time Plaintiff went out on medical leave due to anxiety, depression, and insomnia caused by the behavior of Defendant Whicker), Defendant Whicker frequently harassed, belittled, intimidated, bullied, disrespected, and in other ways acted inappropriately and illegally toward Plaintiff.  Defendant Whicker did not treat male County employees in such a manner.

48.     In particular, Defendant Whicker's actions at meetings with Plaintiff included frequent inappropriate gestures, as well as aggressive and threatening body language in close proximity to Plaintiff, such as puffing out his chest, raising and flapping his arms, slapping his hands on the table, and/or angrily throwing his backpack to the floor.  On such occasions, Plaintiff became concerned about what Defendant Whicker might do next, and feared that he might hit her or strike her in some manner, as he appeared very irate, unstable, and red in the face.  Defendant Whicker did not treat male County employees in the same manner which he treated Plaintiff.

49.     After a particularly hostile one-on-one meeting with Defendant Whicker on May 14, 2014, for which Defendant Whicker showed up over an hour late, and in which Defendant Whicker displayed much of the behavior described in the preceding paragraph, Plaintiff made a verbal report of Defendant Whicker's harassment to the County's Human Resources department as described elsewhere herein.

8

50.     On more than one occasion between March and May of 2014, Plaintiff observed Defendant Whicker remove an unlabeled vial from his bag, which vial contained a liquid that Defendant Whicker applied between his lips and his gums during meetings with Plaintiff and others.  Upon information and belief, Human Resources was aware of Defendant Whicker's use of the substance, but never confirmed what Defendant Whicker was consuming and whether it was pursuant to a valid prescription or was appropriate over-the-counter medication.  Rather, upon information and belief, Defendant Whicker's statement that the substance was allergy medication was accepted without proof, even though the vial was not labeled.

51.     Also during the period from March through May of 2014, Defendant Whicker would refer to Plaintiff in a derogatory manner as "File Queen."  Defendant Whicker knew Plaintiff did not like being called that name as he used it, and he never referred to male employees as "File Queen" or "File King."

52.     During a one-on-one meeting with Plaintiff, Defendant Whicker suggested that Plaintiff should retire.  Defendant Whicker suggested to Plaintiff that, like Defendant Whicker's wife, Plaintiff should be at home where she belonged.

53.     At other times and in other settings Defendant Whicker made age-related remarks to Plaintiff, suggesting that she "had her time in" and that she "should just retire."

54.     Furthermore, Plaintiff is informed and believes that the County treated her differently than male County employees, in that she was not paid the same as male employees in comparable management-level positions, including, but not limited to, Rodney Stewart, the Emergency Medical Services Supervisor, and Robert Cardwell, the Fire Marshal.  Even Defendant Whicker, upon learning how much Plaintiff was compensated, expressed his surprise at the fact that Plaintiff was compensated less than her male counterparts.  Even though

9

Defendant Whicker promised to look into the discrepancy in her compensation, upon information and belief, he never did so.

55.    In addition to being compensated by the County in an amount less than her male counterparts, Plaintiff was also expected to be, and was in fact, much more independent and self-sufficient in the performance of her job duties. Plaintiff's male counterparts, including Mr. Stewart and Mr. Cardwell, had administrative assistants to help them perform their job duties, which job duties Plaintiff was expected to perform on her own, without assistance.

56.    Plaintiff was never provided an administrative assistant despite her significant responsibilities as the 911 Communications Director and her responsibilities with the 911 PSAP Consolidation Project.

57.    Given her years of service, position, and responsibilities, Plaintiff was underpaid by the County.

58.    In addition, Plaintiff's male counterparts with fewer years of service and fewer responsibilities were paid more than Plaintiff.

59.    Furthermore, Plaintiff's male counterparts received the use of a County-owned vehicle, which the County never provided to Plaintiff or to her department, even for training purposes.

60.    Upon information and belief, the County, the County Manager, and the Board were all aware of the disparate treatment of Plaintiff as compared to her male counterparts.

61.    Upon information and belief, the County, the County Manager, and the Board were all aware of the hostile work environment created by Defendant Wicker's actions.

62.    The actions of Defendant Whicker caused Plaintiff to suffer ever-increasing levels of stress, anxiety, depression, and insomnia.

63.     The actions and inactions of the County and the Board caused Plaintiff to suffer ever-increasing levels of stress, anxiety, depression, and insomnia.

64.     In particular, after the one-on-one meeting with Defendant Whicker on May 14, 2014, the hostile work environment created by Defendant Whicker, and which was allowed to persist by the Board and the County, became unbearable for Plaintiff.

65.     When Plaintiff reported the mistreatment to which she was being subjected to the County Human Resources Department, she was placed on the PIP approximately two weeks later.

66.     After the May 14, 2014 one-on-one with Defendant Whicker, Plaintiff sought medical treatment that day with the County nurse, who was not available to see her.

67.     On the very next day, Plaintiff sought and obtained treatment from a non-County health care provider, and was treated for anxiety and depression, including prescribed medications.

68.     After being presented with the PIP on May 27, 2014, which included false and malicious statements about Plaintiff and imposed unrealistic corrective measures upon her, Plaintiff's stress, anxiety, and depressive symptoms worsened and she went out on medical leave on May 28, 2014.

69.     On May 31, 2014, Plaintiff submitted the complaint form that had been provided to her by the Human Resources Department.

70.     As reflected in a memo report, dated September 19, 2014, from the County's HR Director, Jaime Joyner, addressed to the County Manager, the County HR Director purportedly conducted an investigation into certain of Plaintiff's allegations in September of 2014 (the "Report").

71.     Ms. Joyner conducted a limited number of interviews on September 16 and 17, 2014, of certain select individuals.

72.     In her Report, Ms. Joyner, relying upon only these select, limited number of interviews, concluded that Plaintiff's "complaint of discrimination / harassment based on her age and gender were not substantiated."

73.     Upon information and belief, the County conducted no other investigations of Plaintiff's complaints.

74.     With Respect to Defendant Whicker, the Report provides that Defendant Whicker "needs to work on his social skills, he doesn't listen well," "cuts everybody off," "can be blunt in his demeanor," and that "improvements can be made with D. Whicker's communications style."

75.     The Report recommended that Defendant Whicker "attend the Becoming a Totally Responsible Person Leadership Course offered by the CAI by March 2015 (Information to be provided by HR)."

76.     The Report demonstrates that the County failed to take seriously the allegations of Plaintiff and that the County performed a self-serving, limited, and inadequate investigation.

77.     As reflected in the Report, a select group of white males were interviewed as part of the investigation, and apparently they were asked only about whether they heard Defendant Whicker "make any comments to or about S. Hall in reference to her age or gender."

78.     Plaintiff was never able to return to work and was ultimately approved for disability retirement, which began effective October 1, 2014.

79.     Plaintiff, at the time of her initial medical leave on May 28, 2014, and at the time she went on disability retirement, had intended to continue working for the County for at least another ten (10) years, but she was prevented from doing so by the wrongful and illegal actions and inactions of the Defendants.

80.     Upon information and belief, at the time Plaintiff's claims arose, and at all times relevant to Plaintiff's claims against the Defendants, the Defendant County and/or Board participated in a local government risk pool or otherwise had in place an insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse them for payments made to satisfy a judgment against the Defendants, thus waiving any applicable immunity claim of the Defendants.

## FIRST CLAIM FOR RELIEF
### (TITLE VII SEX DISCRIMINATION)

81.     The allegations in paragraphs 1 – 80 are incorporated herein by reference.

82.     As a female, Plaintiff is a member of a protected class under 42 U.S.C. § 2000e-2.

83.     During the course of her employment, Defendant Whicker subjected Plaintiff to unwelcome conduct, which included public ridicule, humiliation, verbal abuse, disrespect, disparate treatment regarding her compensation, benefits, and job responsibilities, and other unprofessional and unlawful mistreatment.  Plaintiff, by her actions, which included, among other things, making a complaint, both verbal and written, to her supervisor and with the County's Human Resources Department, made it clear that the conduct of the County and Defendant Whicker was not welcome.

84.     Plaintiff was the target of Defendant Whicker's hostility and the County's disparate treatment because of her sex.  The sex-based animus that motivated Defendant Whicker's hostility is made manifest by the nature of his comments and by virtue of the fact that, in those settings where Defendant Whicker publicly berated and belittled her, Plaintiff was normally the only female present and Defendant Whicker did not treat the male employees of the County with the same disrespect and hostility that Defendant Whicker directed toward Plaintiff.

13

85.    The unwelcome, gender-based discrimination to which Defendant Whicker subjected plaintiff was sufficiently severe and pervasive to alter the conditions of her employment and to create a hostile working environment.

86.    Plaintiff, herself, subjectively believed that the work environment was hostile and an objective person would conclude the same.

87.    As a result of the wrongful conduct of the Defendants, Plaintiff is entitled to damages for back pay, front pay, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other pecuniary and non-pecuniary losses in amounts to be determined at trial.

88.    The wrongful conduct alleged herein was engaged in by the Defendants with malice and/or with reckless indifference with respect to the rights of Plaintiff, entitling Plaintiff to punitive damages.

### SECOND CLAIM FOR RELIEF
### (RETALIATION IN VIOLATION OF TITLE VII)

89.    The allegations in paragraphs 1 – 88 are incorporated herein by reference.

90.    Plaintiff engaged in protected oppositional conduct by filing a complaint with the County's Human Resources Department alleging that Defendant Whicker had discriminated against her based on her sex.

91.    The County took adverse employment action against her by instituting a reactionary and excessively draconian PIP.

92.    There was a causal link between the County's institution of the PIP and Plaintiff's complaint against Defendant Whicker.

93.    As a result of the wrongful conduct of the Defendants, Plaintiff is entitled to damages for back pay, front pay, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment

of life, harm to reputation, and other pecuniary and non-pecuniary losses in amounts to be determined at trial.

94.     The wrongful conduct alleged herein was engaged in by the Defendants with malice and/or with reckless indifference with respect to the rights of Plaintiff, entitling Plaintiff to punitive damages.

**THIRD CLAIM FOR RELIEF**
**(ADEA AGE DISCRIMINATION)**

95.     The allegations in paragraphs 1 – 94 are incorporated herein by reference.

96.     As a person over 40 years of age, Plaintiff is an individual protected by the Age Discrimination in Employment Act ("ADEA").

97.     Defendant County is an employer covered by the requirements of the ADEA.

98.     Plaintiff suffered an adverse employment action based on her age in that she was subject to disparate belittling and disrespectful treatment by Defendant Whicker and placed under an unrealistic and draconian PIP by Defendant Whicker and Defendant County.

99.      As a result of the wrongful conduct of the Defendants, Plaintiff is entitled to damages for back pay, front pay, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other pecuniary and non-pecuniary losses in amounts to be determined at trial.

100.    The wrongful conduct alleged herein was engaged in by the Defendants willfully and/or with reckless disregard with respect to whether their actions were prohibited, entitling Plaintiff to liquidated and/or punitive damages.

**FOURTH CLAIM FOR RELIEF**
**(RETALIATION IN VIOLATION OF ADEA)**

101.    The allegations in paragraphs 1 – 100 are incorporated herein by reference.

102.     Plaintiff engaged in protected oppositional conduct by filing a complaint with the County's Human Resources Department alleging that Defendant Whicker had discriminated against her based on her age.

103.     The County took adverse employment action against her by instituting a reactionary and excessively draconian performance improvement plan ("PIP").

104.     There was a causal link between the County's institution of the PIP and Plaintiff's complaint against Defendant Whicker.

105.     As a result of the wrongful conduct of the Defendants, Plaintiff is entitled to damages for back pay, front pay, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other pecuniary and non-pecuniary losses in amounts to be determined at trial.

106.     The wrongful conduct alleged herein was engaged in by the Defendants willfully and/or with reckless disregard with respect to whether their actions were prohibited, entitling Plaintiff to liquidated and/or punitive damages.

## FIFTH CLAIM FOR RELIEF
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

107.     The allegations in paragraphs 1 – 106 are incorporated herein by reference.

108.     Defendant Whicker is liable to Plaintiff based on intentional infliction of emotional distress.

109.     Defendant Whicker's actions herein were intentional, malicious, made in bad faith, and/or outside the scope of his authority, which subjects Defendant Whicker to liability in his individual and official capacities on this claim.

110.     Defendant Whicker's actions toward and treatment of Plaintiff as alleged herein constitute extreme and outrageous conduct.

16

111.     Defendant Whicker's actions toward and treatment of Plaintiff as alleged herein were intended to cause Plaintiff severe emotional distress.

112.     Plaintiff did, in fact, suffer severe emotional distress due to Defendant Whicker's conduct, because she was diagnosed with and has been treated with prescription medications for anxiety, depression, and insomnia following Defendant Whicker's mistreatment and, furthermore, because Plaintiff subsequently commenced disability retirement as a result of Defendant Whicker's conduct.

113.     As a result of the wrongful conduct of Defendant Whicker, Plaintiff has suffered damages including lost wages, lost employment benefits, medical expenses, mental anguish, loss of enjoyment of life, and other damages to be shown at trial.

114.     The willful and wanton conduct of Defendant Whicker entitles Plaintiff to punitive damages in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

115.     The allegations in paragraphs 1 – 106 are incorporated herein by reference.

116.     Defendant Whicker and the County and/or Board are liable to Plaintiff based on negligent infliction of emotional distress.

117.     Defendants owed Plaintiff the legal duty imposed upon every person to exercise the degree of ordinary care that a reasonable and prudent person would exercise under the same or similar circumstances.  Furthermore, Defendants owed Plaintiff the legal duty to act reasonably in investigating Plaintiff's mistreatment by Defendant Whicker, both prior to and after her verbal complaint to Human Resources on May 14, 2014.

118.     Defendant Whicker, individually and as an agent of Defendants County and Board, negligently breached the duty owed to Plaintiff by engaging in hostile and demeaning conduct

toward Plaintiff, which conduct a reasonable and prudent person in Defendant Whicker's circumstances would not have engaged.

119.    Defendants County and Board negligently breached their duties to Plaintiff by permitting Defendant Whicker to engage in hostile and demeaning conduct toward Plaintiff, which conduct a reasonable and prudent person under the circumstances would not have engaged or permitted to occur.  Furthermore, Defendants County and Board negligently breached their duty to Plaintiff by failing to investigate Plaintiff's mistreatment by Defendant Whicker, which was known or should have been known to County and Board both prior to and after Plaintiff's verbal complaint to Human Resources on or about May 14, 2014.

120.    At the time of Defendant Whicker's conduct, it was reasonably foreseeable to the Defendants that Defendant Whicker's conduct and the County's and Board's failure to act to prevent such conduct would cause Plaintiff to suffer severe emotional distress, as a reasonable and prudent person would foresee that publicly and privately berating and belittling a person merely engaged in the performance of her occupational duties would cause that person severe emotional distress.

121.    Plaintiff did, in fact, suffer severe emotional distress based on Defendant Whicker's conduct, as she was diagnosed with and has been treated with prescription medications for anxiety, depression, and insomnia following Defendant Whicker's mistreatment and, furthermore, Plaintiff subsequently commenced disability retirement as a result of Defendant Whicker's conduct.

122.    As a result of the wrongful conduct of Defendant Whicker, Plaintiff has suffered damages including lost wages, lost employment benefits, medical expenses, mental anguish, loss of enjoyment of life, and other damages to be shown at trial.

## SEVENTH CLAIM FOR RELIEF
### (NEGLIGENT HIRING, RETENTION & SUPERVISION)

123.    The allegations in paragraphs 1 – 122 are incorporated herein by reference.

124.    Defendants Board and County negligently hired, retained, and/or supervised Defendant Whicker.

125.    As discussed above, Defendant Whicker committed tortious acts against Plaintiff, namely both or either intentional and/or negligent infliction of emotional distress.

126.    As a consequence of those tortious acts, plaintiff suffered severe emotional distress, as she was diagnosed with and has been treated with prescription medications for anxiety, depression, and insomnia following Defendant Whicker's mistreatment and, furthermore, Plaintiff subsequently commenced disability retirement as a result of Defendant Whicker's conduct.

127.    Prior to placing Defendant Whicker in a supervisory position over Plaintiff in March of 2014, Defendants Board and County knew, or in the exercise of reasonable care, should have known, of Defendant Whicker's hostile and otherwise improper treatment of Plaintiff.

128.    Upon information and belief, prior to being hired by Defendants Board and County, Defendant Whicker's employment relationship with a previous employer was terminated following charges of improper conduct, including sexual harassment of a female employee.

129.    Defendants Board and County knew or should have known of Defendant Whicker's harassment and otherwise illegal treatment of Plaintiff after he was placed in a supervisory position over Plaintiff in March of 2014.

130.    Upon information and belief, at no time did Defendants County or Board conduct a reasonable investigation into Defendant Whicker's employment history and/or his treatment of Plaintiff prior to and after he was placed into a supervisory position over Plaintiff.

19

131.    At no time did Defendants County or Board conduct a reasonable investigation into the verbal and written complaints made by Plaintiff regarding the hostile and otherwise improper and illegal actions of Defendant Whicker described herein.

132.    As a result of the wrongful conduct of the Defendants Board and County, Plaintiff has suffered damages, including lost wages, lost employment benefits, medical expenses, mental anguish, loss of enjoyment of life, and other damages to be shown at trial.

WHEREFORE, Plaintiff respectfully prays that the Court:

1.    Award Plaintiff damages on her Title VII claims in an amount to be shown at trial for back pay, front pay, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other pecuniary and non-pecuniary losses, as well as for punitive damages, costs, and attorneys' fees as provided by law;

2.    Award Plaintiff damages on her ADEA claims in an amount to be shown at trial for back pay, front pay, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other pecuniary and non-pecuniary losses, as well as for punitive damages, costs, and attorneys' fees as provided by law;

3.    Award Plaintiff damages on her claim for Intentional Infliction of Emotional Distress in an amount to be shown at trial for lost wages, lost employment benefits, medical expenses, mental anguish, loss of enjoyment of life, and other damages to be shown at trial, as well as for punitive damages, costs, and attorneys' fees as provided by law;

4.    Award Plaintiff damages on her claim for Negligent Infliction of Emotional Distress in an amount to be shown at trial for lost wages, lost employment benefits, medical expenses, mental anguish, loss of enjoyment of life, and other damages to be shown at trial, as well as for costs and attorneys' fees as provided by law;

20

5.    Award Plaintiff damages on her claim for Negligent Hiring, Retention, and Supervision in an amount to be shown at trial for lost wages, lost employment benefits, medical expenses, mental anguish, loss of enjoyment of life, and other damages to be shown at trial, as well as for costs and attorneys' fees as provided by law; and

6.    Award Plaintiff such other and further relief as the Court deems just and proper.

This the 9th day of November, 2015.

/s/ Daniel W. Koenig
Daniel W. Koenig
N.C. State Bar No. 24357
dan@triadlawfirm.com

/s/ James A. Hoffman
James A. Hoffman
N.C. State Bar No. 27162
jim@triadlawfirm.com

OF COUNSEL:

HOFFMAN KOENIG PLLC
609-B Eugene Court
Greensboro, NC 27401
(p) 336-560-7899
(f) 336-217-8924
*Attorneys for Plaintiff*