IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LYDIA SUSAN HALL,              )
                              )
              Plaintiff,       )
                              )
     v.                        )        1:15CV938
                              )
ROCKINGHAM COUNTY, THE BOARD   )
OF COUNTY COMMISSIONERS OF     )
ROCKINGHAM COUNTY, and         )
DAVID L. WHICKER,              )
                              )
              Defendants.      )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Presently before this court is a Partial Motion to Dismiss

Plaintiff's Amended Complaint filed by Defendants Rockingham

County ("the County") and David L. Whicker ("Defendant Whicker")

(collectively, "Defendants").[1] (Doc. 16.) Plaintiff Lydia Susan

Hall ("Plaintiff") has responded (Doc. 22), and Defendants have

replied. (Doc. 23.) This matter is now ripe for resolution, and

---

[1] This court notes that Plaintiff has filed an Amended
Complaint (Doc. 14) which is currently the operative pleading,
and renders the original Complaint (Doc. 1) of no legal effect.
See Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir.
2001). However, The Board of County Commissioners of Rockingham
County, who was listed as a defendant in the original Complaint,
is not named as a defendant in the Amended Complaint. As
Plaintiff amended her complaint voluntarily, she has waived any
claims against Defendant Board of County Commissioners. Id.

for the reasons stated herein, Defendants' motion to dismiss will be granted in part and denied in part.

## I.    BACKGROUND

Plaintiff was employed by Defendant Rockingham County for 26 years, from August 8, 1988, until September 30, 2014. (Amended Complaint ("Am. Compl.") (Doc. 14) ¶ 8.) From 2002 until May 28, 2014, Plaintiff was employed as the Director of 911 Communications. (Id. ¶ 11.)

Plaintiff alleges that she was a leader in the field of 911 communications in the County, receiving several awards related to the quality of her work in 2010 and 2011. (Id. ¶¶ 19-21.) Sometime in March of 2014, the County Manager gave Defendant Whicker supervisory power over the 911 Communications Department, including Plaintiff. (Id. ¶ 23.) Plaintiff alleges that Defendant Whicker was given this position despite the County Manger's knowledge that Defendant Whicker had previously subjected Plaintiff to "sexist, hostile, and . . . discriminatory behavior" and despite the fact that he had no prior experience or qualifications in the field. (Id. ¶¶ 24-25.) Plaintiff also contends that the County knew or should have known that Defendant Whicker's previous employment had ended due to charges of improper conduct, including sexual harassment of a

female employee. (Id. ¶¶ 27-28.) Plaintiff contends that Defendant Whicker was given this position because "the County Manager did not want to have to deal with the management and funding issues associated with the 911 PSAP Consolidation Project, and he did not trust a female to oversee and handle the project." (Id. ¶ 26.)

Plaintiff alleges that Defendant Whicker has a history of harassment and hostility towards her, including "belittling her in front of colleagues; interrupting and speaking over her during meetings, . . . ridiculing her opinions and limiting her opportunities to speak; and in other ways treating her in an undignified, unprofessional, and unlawful manner." (Id. ¶ 41.) Plaintiff contends that once Defendant Whicker was appointed to a supervisory role over her, this pattern of treatment worsened. Defendant Whicker's alleged actions towards Plaintiff include "frequent inappropriate gestures, as well as aggressive and threatening body language in close proximity to Plaintiff, such as puffing out his chest, raising and flapping his arms, slapping his hands on the table, and/or angrily throwing his backpack on the floor." (Id. ¶ 48.) This behavior was not exhibited towards male employees, and Plaintiff alleges that she "feared that [Defendant Whicker] might hit her or strike her in

- 3 -

some manner." (Id.) Defendant Whicker also required Plaintiff to attend weekly one-on-one meetings with him, to which he was frequently late or absent entirely. (Id. ¶¶ 45-46.) The Amended Complaint also contains a variety of other allegations regarding Defendant Whicker:

- On more than one occasion, Plaintiff observed him apply a liquid to his lips and gums from an unlabeled vial, which Defendant Whicker contended was allergy medication, a contention which Plaintiff claims was never verified;

- Defendant Whicker repeatedly referred to Plaintiff as "File Queen," despite knowing that she disliked this term;

- Defendant Whicker made age-related remarks to Plaintiff, and suggested that Plaintiff retire on more than one occasion;

- Defendant Whicker told Plaintiff that she should "be at home where she belonged" like his wife was; and

- Defendant received lower pay and fewer benefits than her male counterparts.[2]

---

[2] This court agrees with Defendants that a disparate pay claim was not asserted in Plaintiff's EEOC complaint, and Plaintiff has not disputed that. However, this court is of the opinion that those allegations can be considered in assessing the "intolerability" of the working conditions Plaintiff was faced with.

- 4 -

(Am. Compl. (Doc. 14) ¶¶ 50-59.)

On May 14, 2014, after Defendant Whicker showed up over an hour late to a scheduled one-on-one meeting, and exhibited hostile and harassing behavior, Plaintiff made an oral complaint to the County's Human Resources Department. (Id. ¶¶ 64-65.) Plaintiff alleges that she sought medical treatment after the meeting, but that the County nurse was not available, and she obtained treatment from a non-County health care provider the next day for anxiety and depression. (Id. ¶¶ 66-67.) She was given a written complaint form by Human Resources, which she submitted on May 31, 2014. (Id. ¶ 70.) Human Resources apparently investigated Plaintiff's claim in September of 2014, but Plaintiff contends that the investigation and resulting report demonstrate that the County did not take her allegations seriously, and no substantive action was taken other than Defendant Whicker being placed in the "Becoming a Totally Responsible Person Leadership Course," with no other discipline. (Id. ¶¶ 71-78.)

Plaintiff also contends that, although she "maintained an exemplary employment record," Defendant Whicker gave her a performance improvement plan ("PIP") during a meeting on May 27, 2014, two weeks after she complained to Human Resources. (Id.

- 5 -

¶¶ 29-31.) The PIP contained charges of "insubordination and inappropriate behavior," conduct that was "conducive to creating an environment of fear and distrust," as well as statements that Plaintiff "readily attribut[ed] blame/avoid[ed] taking responsibility for required job duties" and "fail[ed] in performance of duties," all allegations which Plaintiff contends are false and malicious. (Id. ¶ 33.) The PIP contained corrective actions for these alleged deficiencies, which Plaintiff contends were unreasonable and "designed to set [her] up for failure." (Id. ¶¶ 34-35.)

Finally, Plaintiff contends that, during her employment with the County, she was treated differently from male employees. She alleges that she was not paid the same as several identified male employees in comparable management-level positions, that she was expected to be more independent and self-sufficient than male counterparts, who had administrative assistants to help with their duties. (Id. ¶¶ 54-55.) Plaintiff alleges that she was underpaid compared to male counterparts with fewer years of service and fewer responsibilities, and that she was never given a County-owned vehicle, unlike male counterparts. (Id. ¶¶ 58-59.)

As a result of these combined factors, Plaintiff alleges that she suffered "ever-increasing levels of stress, anxiety, depression, and insomnia," and that on May 28, 2014, Plaintiff's doctor determined that she needed to take medical leave from her employment. (Id. ¶¶ 62-63, 69.) Plaintiff alleges that at the time she went on disability leave, she had intended to work for the County for "at least another ten (10) years," but was prevented from doing so by the actions of Defendants. (Id. ¶ 80.) Plaintiff ultimately began disability retirement effective October 1, 2014. (Id. ¶ 11.) Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination on October 27, 2014, alleging that she was discriminated against, subjected to a hostile work environment, harassed, disciplined, and forced to retire due to her race, sex, and age. (See Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss ("Defs.' Br."), Ex. 1, EEOC Complaint (Doc. 17-1).)

## II. **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible

- 7 -

provided the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. The pleading setting forth the claim must be "liberally construed" in the light most favorable to the nonmoving party, and allegations made therein are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, "the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see Iqbal, 556 U.S. at 662. Under Iqbal, the court performs a two-step analysis. First, the court separates factual allegations from allegations not entitled to the assumption of truth (i.e., conclusory allegations, bare assertions amounting to nothing more than a "formulaic recitation of the elements"). Iqbal, 556 U.S. at 681. Second, the court determines whether the factual allegations, which are

accepted as true, "plausibly suggest an entitlement to relief."
Id. "At this stage of the litigation, a plaintiff's well-pleaded
allegations are taken as true and the complaint, including all
reasonable inferences therefrom, are liberally construed in the
plaintiff's favor." Estate of Williams-Moore, 335 F. Supp. 2d at
646.

## III. **ANALYSIS**

The Amended Complaint contains eleven causes of action: (1)
Title VII Sex Discrimination; (2) Retaliation in violation of
Title VII; (3) Constructive Discharge in violation of Title VII;
(4) Age Discrimination in Employment Act ("ADEA"); (5) ADEA Age
Discrimination based on a hostile work environment; (6)
Retaliation in violation of the ADEA; (7) Constructive Discharge
in violation of the ADEA; (8) a procedural due process violation
under 42 U.S.C. § 1983; (9) Intentional Infliction of Emotional
Distress; (10) Negligent Infliction of Emotional Distress; and
(11) Negligent Hiring, Retention and Supervision. (Am. Compl.
(Doc. 14) ¶¶ 83-170.) Defendants have now moved to partially
dismiss the complaint, raising issues as to every cause of
action except Plaintiff's Fifth Claim for Relief for age
discrimination under the ADEA based on a hostile work

- 9 -

environment, and Eleventh Claim for Relief for negligent hiring, retention, and supervision.

### A. Plaintiff's Claims for Constructive Discharge under Title VII (Third Claim for Relief) and the ADEA (Seventh Claim for Relief)

Defendants first move to dismiss Plaintiff's causes of action for constructive discharge under both Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq., and the ADEA, codified at 29 U.S.C. § 621 et seq. The standard for constructive discharge under both statutes is the same: Plaintiff must show (1) that the employer's actions were deliberate, and (2) that those actions created working conditions that were intolerable. See Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1354 (4th Cir. 1995); Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985). In order for an employer's actions to be deemed "deliberate," the Fourth Circuit requires that they be "intended by the employer as an effort to force the employee to quit." Cavalier Hotel, 48 F.3d at 1354 (internal quotation marks and citations omitted). In assessing the deliberateness of actions, specific proof of intent is not required, and an employer "must necessarily be held to intend the reasonably foreseeable consequences of its actions." Id. at 1355 (internal quotation marks and citations

omitted). Intent can also be inferred "through circumstantial evidence, including a failure to act in the face of known intolerable conditions." <u>Bristow</u>, 770 F.2d at 1255.

In order to show the second element, intolerability of the conditions, working conditions must be "so intolerable that a reasonable person would have felt compelled to resign." <u>Pa. State Police v. Suders</u>, 542 U.S. 129, 147 (2004). "An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress." <u>Bristow</u>, 770 F.2d at 1255. "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." <u>Carter v. Ball</u>, 33 F.3d 450, 459 (4th Cir. 1994).

On the deliberateness prong, Plaintiff has alleged enough to show that Defendants' conduct was intended to make her resign. The Amended Complaint contends that on multiple occasions Defendant Whicker suggested either that Plaintiff retire or that her place was "at home." (Am. Compl. (Doc. 14) ¶¶ 52-53.) This, combined with the ongoing and consistent

harassment and scrutiny placed on her job performance, conduct not shown towards other employees, suffices to demonstrate a deliberate intent by Defendant Whicker to force her exit. Further, the Amended Complaint alleges that the County placed Defendant Whicker in a supervisory role over Plaintiff despite knowledge of past instances of harassment, both towards Plaintiff and other women, and that when Plaintiff complained to Human Resources, only a cursory review was done and little effort was made to discipline Defendant Whicker. (Id. ¶¶ 24, 71-72, 74.) Plaintiff was then issued an allegedly unfair and impossible-to-meet PIP two weeks after her complaint, lending credence to the inference that, if the PIP was not related directly to Plaintiff's actions in complaining to HR, the County was at best indifferent to her ongoing problems with Defendant Whicker, and did not work to solve them. (Id. ¶¶ 30-35.) Taken together, these allegations suffice to meet the first prong of the test. See Cavalier Hotel, 48 F.3d at 1355.

Plaintiff also alleges enough at this stage to plausibly show her working conditions were intolerable. First, while Plaintiff alleges matters such as disrespectful and unprofessional mistreatment including an "unachievable and draconian PIP," the absence of administrative support, or

"public ridicule," (Am. Compl. (Doc. 14) ¶¶ 41, 102, 104), these allegations of harassment by a single individual might not be enough to rise to the level of intolerable conditions. <u>See, e.g.</u>, <u>Carter v. Ball</u>, 33 F.3d 450, 459 (4th Cir. 1994). However, Plaintiff also alleges she was physically intimidated by Defendant Whicker, and allegedly subjected to sexist remarks, such as, being told her place as a female was "at home," and being referred to as the "File Queen." (Am. Compl. (Doc. 14) ¶¶ 48, 50-53.) Plaintiff alleges an "unachievable . . . PIP." (<u>Id.</u> at 104.) Plaintiff further alleges that she was treated differently from her male peers in that she was paid less, given fewer benefits, had different working conditions in terms of support (more self-sufficient), and that Defendant Whicker was promoted above her because she was a woman, despite his lack of qualifications in comparison to hers. (<u>Id.</u> ¶¶ 25, 54-59.) At this pleadings stage, this court is not able to simply weigh these conditions individually, but instead must also analyze the plausibility of the allegations in light of the cumulative effect alleged by Plaintiff. <u>See, e.g.</u>, <u>Chertkova v. Conn. Gen. Life Ins. Co.</u>, 92 F.3d 81, 90 (2d Cir. 1996).

Taken together, these allegations go beyond the "frustrations, challenges and disappointments" that naturally

- 13 -

"inhere in the nature of work." Bristow, 770 F.2d at 1255.
Rather than merely being subjected to extra scrutiny, unfair
judgment in her work quality, or generally rude behavior,
Plaintiff alleges that she was singled out for targeted public
and private harassment based on her age and sex, was subjected
to unfair scrutiny in her work above that of her co-workers, and
was not only passed over for a promotion in favor of someone
less qualified, but was passed over for someone with a history
of harassment, who was put directly in charge of her. Such
allegations, at this stage, suffice to show intolerable
conditions.[3] See, e.g., Amirmokri v. Baltimore Gas & Elec. Co.,
60 F.3d 1126, 1133 (4th Cir. 1995) (employee showed intolerable
conditions where he alleged he was subjected to epithets about
his Iranian heritage and embarrassed publicly by coworkers);
Mitchell v. Bandag, Inc., 147 F. Supp. 2d 395, 430-04 (E.D.N.C.
1998) (noting that situations such as repeated failure to

---

[3] This court notes that at the 12(b)(6) stage, Plaintiff's
allegations must be taken as true, and the court will not weigh
the merits of any claim. See Johnson v. Portfolio Recovery
Assocs., LLC, 682 F. Supp. 2d 560, 567 (E.D. Va. 2009) ("A
12(b)(6) motion . . . 'does not resolve contests surrounding the
facts, the merits of a claim, or the applicability of
defenses.'" (quoting Republican Party of N.C. v. Martin, 980
F.2d 943, 952 (4th Cir. 1992)). While the County may eventually
put forward justifications for its decisions or evidence that
some or all of the allegations are not true, at this stage,
Plaintiff has met her burden.

promote and simultaneous promotion of less qualified individuals, or where plaintiff has the belief that there is no chance for advancement or fair treatment suffice to show intolerable conditions); Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668 (7th Cir. 1993) (holding that racially charged insults from a supervisor created intolerable working conditions).

Plaintiff has alleged sufficient facts to meet both elements of constructive discharge, and as such, Defendants' motion to dismiss these claims will be denied.

**B.** **Plaintiff's Claims for Retaliation under Title VII (Second Claim for Relief) and the ADEA (Sixth Claim for Relief)**

Defendants next move to dismiss Plaintiff's claims for retaliation, which she brings under both Title VII and the ADEA. The allegations center on the issuance of the PIP to Plaintiff just under two weeks after she made a complaint to her Human Resources Department regarding Defendant Whicker's conduct. In order to establish a prima facie case for retaliation under either statute, a Plaintiff must prove: "(1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." See Boyer-Liberto v.

Fontainebleau Corp., 786 F.3d 264, 271 (4th Cir. 2015); Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006).

Defendants do not dispute that Plaintiff's complaint to the Human Resources Department was a protected activity, and this court finds that it was.[4]

However, Defendants do contest whether Plaintiff suffered an "adverse employment action." In the context of a retaliation claim under Title VII or the ADEA, an adverse employment action "is not limited to discriminatory actions that affect the terms and conditions of employment," as it is in a substantive discrimination action. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006). Rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (internal

---

[4] The Amended Complaint shows that in her complaint to Human Resources, Plaintiff alleged discrimination and harassment based upon her age and gender. (Am. Compl. (Doc. 14) ¶¶ 49, 65, 73.) This court finds that, on the facts alleged, Defendant has alleged both a subjective and an objectively reasonable belief that her treatment violated both Title VII and the ADEA as required by the standard. See EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005); Johnson v. Mechs. & Farmers Bank, 309 F. App'x 675, 685 (4th Cir. 2009). As such, her complaint to Human Resources was a protected activity for purposes of this analysis.

quotation marks and citations omitted); <u>Kessler v. Westchester</u>
<u>Cnty. Dep't of Soc. Servs.</u>, 461 F.3d 199, 207-09 (2d Cir. 2006)
(applying the same standard to ADEA claims).

Defendants contend that the County's actions amount to mere
criticism of Plaintiff and her job performance, and that
negative performance evaluations are insufficient to constitute
a "materially adverse" action in the eyes of a reasonable
employee. However, Defendants' cited support for that
proposition is distinguishable from the circumstances alleged in
Plaintiff's Complaint. For example, many of the cases address
negative performance evaluations in the context of a substantive
discrimination claim, which, as noted above, has a heightened
standard compared to retaliation claims. <u>See, e.g.</u>, <u>Eady v.</u>
<u>Veolia Transp. Servs., Inc.</u>, 609 F. Supp. 2d 540 (D.S.C. 2009);
<u>Pulley v. KPMG Consulting, Inc.</u>, 348 F. Supp. 2d 388 (D. Md.
2004).

Further, the Amended Complaint contains allegations that go
beyond mere criticism of Plaintiff's work, or suggestions for
improvement, alleging not only that the allegations in the PIP
were false and malicious, but that it also enforced work
standards that were impossible to meet. Taking the allegations
as true, this court finds that the imposition of "impossible to

- 17 -

meet" working standards, based upon false allegations made by a harassing supervisor, is materially adverse such that it would dissuade a reasonable employee from making or supporting a charge of discrimination. Burlington, 538 U.S. at 68. As such, Plaintiff has met the second element of retaliation.

Finally, Plaintiff has alleged enough at this stage to show a causal link between her protected activity and the adverse employment action. The burden of showing a causal nexus is "not onerous." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Evidence that the alleged adverse action occurred shortly after the employer became aware of the protected activity is sufficient to satisfy the burden of making a prima facie case of causation. Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir. 1998) (internal quotations omitted). However, the Fourth Circuit has expressly declined to determine "how close a temporal connection must [there be] for . . . a causal nexus [to exist]." Brockman v. Snow, 217 F. App'x 201, 207 (4th Cir. 2007).

Here, Plaintiff alleges that she complained to the Human Resources Department on May 14, 2014, that Defendant Whicker learned of her complaint afterwards, and that she was issued the allegedly malicious, false, and impossible to meet PIP on

- 18 -

May 27, 2014, thirteen days later. (Am. Compl. (Doc. 14) ¶¶ 33, 37-38.) This court finds that the temporal proximity of the PIP to her initial complaint, combined with the allegations that she had an "exemplary employment record" up until Defendant Whicker became her supervisor, is enough at this stage to allege a causal link.

Plaintiff has alleged sufficient facts to show a prima facie case of retaliation under both Title VII and the ADEA, and Defendants' motion to dismiss those claims will be denied.

## C.    Plaintiff's ADEA Age Discrimination Claim (Fourth Claim for Relief)

Defendants also seek to dismiss Plaintiff's substantive ADEA age discrimination claim. To sufficiently allege such a claim, Plaintiff must show: "(1) that [s]he is a member of a protected class, (2) who suffered an adverse employment action, (3) despite satisfactorily meeting the employer's legitimate expectations at the time of the adverse action, and (4) that [s]he has been treated less favorably than persons not members of the protected class." Ramos v. Molina Healthcare, Inc., 963 F. Supp. 2d 511, 522 (E.D. Va. 2013), aff'd, 603 F. App'x 173 (2015) (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13 (1996)).

Even assuming Plaintiff has adequately alleged the other three elements, as noted above, an adverse employment action under the <u>substantive</u> provision of the ADEA is subject to a stricter standard than the retaliation provision, and Plaintiff has not met that standard here. An adverse employment action under the substantive provision requires an action that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Burlington</u>, 524 U.S. at 761. Defendants' cited cases carry more weight as to this claim, and show that the PIP was not an adverse employment action because it did not "cause[] any change whatsoever in plaintiff's job, pay, or benefits or in [her] employment status." <u>See, e.g.</u>, <u>Eady</u>, 609 F. Supp. 2d at 556. For example, Plaintiff does not allege that the PIP caused her to "receive[] lower pay, [be] demoted, [be] passed over for a promotion, fail[] to receive a bonus, or [be] given significantly different responsibilities." <u>Jensen-Graf v. Chesapeake Employers' Ins. Co.</u>, 616 F. App'x 596, 598 (4th Cir. 2015). As such, the PIP was not an adverse employment action for purposes of a substantive ADEA age discrimination claim.

Because she fails to state an essential element of the claim, Plaintiff has failed to state a cause of action, and Defendants motion to dismiss as to this claim will be granted.

**D.   Plaintiff's § 1983 Procedural Due Process Claim (Eighth Claim for Relief)**

Defendant also moves to dismiss Plaintiff's claim for a due process violation pursuant to 42 U.S.C. § 1983. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). In order to state a claim for a due process violation, a plaintiff's allegations must implicate a protected liberty or property interest, as well as a deprivation of that interest by some form of state action. See Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988)

Both parties assume arguendo that Plaintiff's continued employment was a constitutionally protected property interest under section 1983, and this court finds that it was. Under North Carolina law, an employee has a protected "property" interest in continued employment only if the employee can show a legitimate claim to continued employment under a contract, a state statute or a local ordinance. Peace v. Emp't Sec. Comm'n,

349 N.C. 315, 321, 507 S.E.2d 272, 277 (1998). The North Carolina General Assembly created, by enactment of the State Personnel Act, a constitutionally protected "property" interest in the continued employment of a "career State employee." N.C. Gen. Stat. § 126-35. The act applies to State employees, as well as, among others, "employees of . . . [l]ocal emergency management agencies that receive federal grant-in-aid funds." N.C. Gen. Stat. § 126-5(a)(2)(d).

Here, Plaintiff has alleged that she was employed as the Director of 911 Communications, which is a local emergency management agency that receives federal grant-in-aid funds.[5] As such, she had a protected property interest in continued employment under North Carolina law.

Defendants contend, however, that Plaintiff cannot show any state action, because she was not actually discharged from her employment. Plaintiff does not contend that she was actually terminated by Defendants, and admits that she instead went on medical leave, and then retired. However, if Plaintiff's decisions to go on medical leave and subsequently retire were so involuntary that they amounted to constructive discharge, they

---

[5] The Amended Complaint specifically alleges the receipt of at least one federal grant for the 911 PSAP Consolidation Project. (See Am. Compl. (Doc. 14) ¶ 21.)

would qualify as a state action for purposes of this inquiry. See Stone, 855 F.2d at 173 ("If, on the other hand, [a plaintiff's] 'resignation' was so involuntary that it amounted to a constructive discharge, it must be considered a deprivation by state action triggering the protections of the due process clause."). As noted above, Plaintiff has alleged a facially plausible case for constructive discharge, in that she has plausibly alleged a reasonably person would have felt compelled to resign by the actions and inactions of Defendants. Thus, at this stage, she has plausibly alleged both a property interest and deprivation of that property interest by state action. Defendants' motion to dismiss will be denied as to this claim.

### E. Negligent Infliction of Emotional Distress (Tenth Claim for Relief)

Next, Defendants move to dismiss Plaintiff's claim for negligent infliction of emotional distress. In order to state a claim for negligent infliction of emotional distress, Plaintiff must plausibly allege that (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; and (3) the conduct caused plaintiff severe emotional distress. Sheaffer v. County of Chatham, 337 F. Supp. 2d 709, 733 (M.D.N.C. 2004).

Defendant Whicker argues that Plaintiff's claim against him fails because she has alleged only intentional conduct, which cannot form the basis of a claim for negligent infliction of emotional distress. The County moves to dismiss on the basis that the claim is barred by the exclusivity provision of the Worker's Compensation Act,

It is well-settled in the Fourth Circuit that allegations of intentional conduct are insufficient to form the basis of a negligent infliction of emotional distress claim. See Barbier v. Durham Cnty. Bd. of Educ., 225 F. Supp. 2d 617, 631 (M.D.N.C. 2002). Although Plaintiff claims that her allegations against Defendant Whicker detail negligent acts, the Amended Complaint reflects otherwise. Plaintiff claims that she was "the target" of Defendant Whicker's hostility because of her sex and age, and that the PIP was instituted maliciously and in retaliation for her complaint to HR. (See Am. Compl. (Doc. 14) ¶¶ 88, 95, 117, 124.) These allegations describe conduct that was intentional, and thus cannot form the basis of a claim for negligent infliction of emotion distress. See Sheaffer, 337 F. Supp. 2d at

734. As such, Plaintiff's claim for negligent infliction of emotional distress against Defendant Whicker will be dismissed.[6]

As for her claim against the County, Plaintiff alleges that the County was negligent in that it "permit[ed] Defendant Whicker to engage in hostile and demeaning conduct towards Plaintiff . . . [and] fail[ed] to investigate Plaintiff's mistreatment by Defendant Whicker, which was known or should have been known to the County . . . ." (Am. Compl. (Doc. 14) ¶ 157.) Thus, Plaintiff alleges two theories of liability as to the County: one under respondeat superior, and another for direct liability due to failure to investigate her claims. As to Plaintiff's theory of respondeat superior, as noted above, Plaintiff has failed to state a claim for negligent infliction of emotional distress against Defendant Whicker. As such, there is no underlying claim for which the County can be liable under a theory of respondeat superior, and that claim will be dismissed.  Any liability on the part of the County for

---

[6] The court notes that the dismissal is the result of the way Plaintiff has chosen to make these allegations. By choosing to frame Defendants' actions as intentional, she has necessarily taken them out of the realm of negligence. The result is not that Plaintiff is barred from recovery for the alleged actions, but rather that her remedy will lie under a different theory.

Defendant Whicker's actions will lie under one of Plaintiff's other causes of actions.

As to Plaintiff's claim that the County is liable by way of its own negligence for failing to investigate, either before or after her complaint to Human Resources, that claim is barred by the exclusivity provision of the Workers' Compensation Act.[7] The Workers' Compensation Act is the exclusive remedy for accidents which arise out of an employment and are sustained in the course of employment. See Shaw v. Goodyear Tire & Rubber Co., 225 N.C. App. 90, 102, 737 S.E.2d 168, 177 (2013). Just as in Shaw, Plaintiff's injury was caused by an accident as the County's failure to properly deal with Defendant Whicker's mistreatment of Plaintiff and subsequent mishandling of her complaint was "an unlooked for and untoward event which is not expected or designed by the injured employee." Id. at 178. Plaintiff's injury arose out of her employment in that both the risk that an

---

[7] Plaintiff attempts to distinguish Shaw by arguing that she alleges negligence for failure to investigate her mistreatment at the hands of Defendant Whicker prior to her formal complaint to Human Resources, while the Court in Shaw dealt only with the mishandling of a complaint that had already been filed. (See Pl.'s Mem. in Opp'n to Defs.' Partial Mot. to Dismiss (Doc. 22) at 18.) This court finds that distinction unavailing, in that an employer's negligence in investigating harassment before it is complained about, to the extent it is negligence at all, still "arises out of the employment" for purposes of the statute.

- 26 -

employer failing to properly supervise a workplace, and the risk that an employer may fail to properly handle a complaint "is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so that there is some causal relation between the injury and the performance of some service of the employment." Id. Plaintiff's injury was sustained during the course of employment in that the mishandling of her complaints occurred while Plaintiff was working for the County. Id. As such, her claims against the County itself for negligent infliction of emotional distress are barred by the Workers' Compensation Act and will be dismissed for lack of jurisdiction.

### F. Plaintiff's Claim for Intentional Infliction of Emotional Distress (Ninth Claim for Relief)

Plaintiff also brings a cause of action against Defendant Whicker for intentional infliction of emotional distress. Under North Carolina law, intentional infliction of emotional distress consists of the following elements: "(1) extreme and outrageous conduct, (2) which is intended to and does cause (3) severe emotional distress . . . ." Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). A claim may also lie where the defendant's actions show "a reckless indifference to the likelihood that they will cause severe emotional distress." Id. Extreme and outrageous conduct exists "when a defendant's

- 27 -

conduct exceeds all bounds usually tolerated by decent
society[.]" Watson v. Dixon, 130 N.C. App. 47, 52–53, 502 S.E.2d
15, 19–20 (1998), aff'd, 352 N.C. 343, 532 S.E.2d 175 (2000)
(internal citations omitted) (defendant engaged in extreme and
outrageous conduct when he "frightened and humiliated
[plaintiff] with cruel practical jokes, which escalated to
obscene comments and behavior of a sexual nature, . . . finally
culminating in veiled threats to her personal safety."). The
conduct at issue must be "so outrageous in character, and so
extreme in degree, as to go beyond all possible bounds of
decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community." Briggs v. Rosenthal, 73
N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985).

     Plaintiff has failed to allege extreme and outrageous
conduct sufficient to state a cause of action. Taken as true,
the alleged actions of Defendant Whicker were boorish, sexist,
and disrespectful. However, North Carolina law requires more to
state a claim. Courts find extreme and outrageous conduct in
situations only in extreme circumstances, such as explicit and
physical sexual harassment or graphic language, or threats and
actual acts of violence.  See, e.g., Brown v. Burlington Indus.,
Inc., 93 N.C. App. 431, 378 S.E.2d 232 (1989); McLain v. Taco

- 28 -

<u>Bell Corp.</u>, 137 N.C. App. 179, 181, 527 S.E.2d 712, 715 (2000); <u>Poole v. Copland, Inc.</u>, 348 N.C. 260, 498 S.E.2d 602 (1998). Here, Plaintiff alleges that Defendant Whicker unfairly and falsely criticized her work, made sexist comments, harassed her verbally, made movements that were physically intimidating, and belittled her in front of others. (Am. Compl. (Doc. 14) ¶¶ 41, 45-48, 50-52.) These allegations fall short of alleging conduct that "go beyond all possible bounds of decency" or are "utterly intolerable in a civilized society." <u>See</u> <u>Swaim v. Westchester Acad., Inc.</u>, 208 F. Supp. 2d 579, 589 (M.D.N.C. 2002). Because Plaintiff fails to sufficiently allege an element of the claim, her claim for intentional infliction of emotional distress will be dismissed.

### G. <u>Plaintiff's Claim for Disparate Treatment (First Claim for Relief)</u>

Finally, Defendants contend, and Plaintiff does not appear to contest, that her claim for sex discrimination under Title VII must be dismissed to the extent it alleges a claim based upon disparate treatment, because that charge was not raised in Plaintiff's EEOC complaint.

As a prerequisite to bringing suit, an individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the

unlawful act. See 42 U.S.C. § 2000e-5(b), (e)(1), (f)(1). The
administrative process serves the role of "focusing the formal
litigation it precedes" in that "[i]f the claims raised under
Title VII exceed the scope of the EEOC charge and any charges
that would naturally have arisen from an investigation thereof,
they are procedurally barred." Chacko v. Patuxent Inst., 429
F.3d 505, 509 (4th Cir. 2005) (internal citations and quotations
omitted). While the court is to construe administrative
complaints liberally, a claim will "typically be barred if the
administrative charge alleges one type of discrimination - such
as discriminatory failure to promote - and the claim encompasses
another type - such as discrimination in pay and benefits." Id.
(citing Evans v. Techs. Applications & Serv. Co., 80 F.3d 954,
963-64 (4th Cir. 1996); Lawson v. Burlington Indus., Inc., 683
F.2d 862, 863-64 (4th Cir. 1982)).

Here, Plaintiff's EEOC charge alleges:

> I believe that I was discriminated against, subjected
> to a hostile work environment, harassed, disciplined
> and forced to retire due to my race (White) and sex
> (Female) in violation of Title VII of The Civil Rights
> Act of 1964, as amended, and due to my age (52) in
> violation of The Age Discrimination in Employment Act
> of 1967, as amended.

(See Defs.' Br., Ex. 1, EEOC Complaint (Doc. 17-1).) Nowhere in
the allegations does Plaintiff allege that she was given

- 30 -

disparate treatment regarding her compensation, benefits, or job responsibilities, as she does in her first cause of action. (See Am. Compl. (Doc. 14) ¶ 87.) This claim falls outside the scope of her EEOC charge, is therefore procedurally barred, and must be dismissed.

As such, to the extent Plaintiff alleges a claim for disparate treatment in violation of Title VII, that claim will be dismissed.

## IV.  CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendants' Partial Motion to Dismiss (Doc. 16) is **GRANTED IN PART AND DENIED IN PART** and that Plaintiff's first cause of action for sex discrimination under Title VII to the extent it is based upon disparate treatment, fourth cause of action for substantive age discrimination under the ADEA, and ninth and tenth causes of action for both intentional and negligent infliction of emotional distress are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants' Partial Motion to Dismiss (Doc. 8) is **DISMISSED AS MOOT**.

This the 27th day of September, 2016.

William L. Osteen, Jr.
_____
United States District Judge

- 31 -